IN THE MATTER OF CALLIS N. BROWN, AN ATTORNEY AT LAW.

Argued February 23, 1982—Decided April 6, 1982.

*Colette A. Coolbaugh,* Secretary, argued the cause for complainant Disciplinary Review Board.

*Frank P. Lucianna* argued the cause for respondent (*Lucianna, Bierman & Stillman,* attorneys).

PER CURIAM.

The District II Ethics Committee for Bergen County charged the respondent with numerous incidents involving improper conduct. The Committee held hearings and then submitted its presentment to the Disciplinary Review Board which, after examining the record and hearing counsel and the respondent, submitted its recommendation to this Court. We issued an order to show cause, heard oral argument and reviewed the record. We make the following findings and conclusions based on our independent review of the record.

## I. *The Witter Matter*

Ruth and Harold Witter retained respondent on January 3, 1974 to appeal a judgment granting custody of their grandchildren to a maternal aunt. They paid respondent $1,320 of which $900 was for his fee. The balance of $420 was to be applied to costs of the appeal. When the cost of the transcript exceeded the estimate by $111.50, the Witters paid respondent that amount.

Respondent had promptly filed a notice of appeal and thereafter did nothing further to prosecute the appeal except to order the transcript. Thereafter during a period of more than three years, Mr. and Mrs. Witter telephoned respondent to find out the status of the appeal. At first he replied that the appeal had been filed and the matter would be coming up shortly, despite his knowledge that the appeal had been dismissed for lack of prosecution. Later, respondent simply failed to respond to the Witters' inquiries.

Finally the Witters retained other counsel in April 1977 to find out what had happened. Their new attorney wrote respondent on four occasions, April, July, August and October. Respondent never replied.

A complaint was filed with the District II Ethics Committee and served on respondent on March 10, 1978. When the matter came on for hearing more than a year later, respondent had not filed an answer. When asked why it had not been prepared, he responded, "It's just inattention." He sought an adjournment, saying, "Now that I'm here—I need counsel."

The matter was adjourned. When the hearing recommenced on May 30, respondent appeared *pro se*. He stated he had not spoken to an attorney whom he desired to retain until the day before, but the attorney was not available.

The hearing was not completed on May 30 and the continued date was September 17, 1979. Respondent did not appear on that date or explain his unavailability.

Insofar as the appeal is concerned, the record disclosed that (1) a notice of appeal was filed on January 9, 1974; (2) the Appellate Division on its own served a motion to dismiss the appeal on May 13, 1974; (3) the motion was denied and the respondent given to June 13, 1974 to file his brief; (4) the brief was not filed and a motion to dismiss was served on August 23, 1974, returnable September 3, 1974, and (5) there being no appearance, the appeal was dismissed.

On August 30, 1974, respondent telephoned David Brantley and requested he appear on the motion on September 3 to seek another extension of time to file the brief. Respondent was going on vacation for approximately four weeks. Brantley understood the return date was September 4. Respondent had not mailed the notice of motion to Brantley until Saturday, August 31. Monday, September 2 was Labor Day, and Brantley did not receive the notice until the end of the business day on September 3. Brantley called the Clerk's office and was advised that a motion to vacate would have to be filed.

Respondent moved to vacate the dismissal more than 16 months later on January 23, 1976. The clerk of the Appellate Division wrote respondent that his motion had to be supported by a brief. Respondent did not reply. Repeated telephone calls were made from the Clerk's office to respondent seeking the brief. There was no response and the appeal was dismissed on April 6, 1976.

## II. *Gutkowski*

Leonard Gutkowski retained respondent on February 18, 1977 to institute and process a divorce action. The agreed fee was $850. The client paid $50 down and was to pay the balance in installments, the final installment of $150 to be paid on the day of trial. The client made four additional payments between March 24, 1977 and November 24, 1977. The aggregate amount paid was $750.

Respondent prepared and filed a complaint and apparently thereafter did nothing. Respondent never answered or respond-

ed to the client's phone calls. Mr. Gutkowski wrote two letters which were not acknowledged. On one occasion he sat in front of respondent's office for three hours, hoping to speak with him. When Mr. Gutkowski finally was able to speak with respondent sometime about September, 1978, respondent said that this matter had been placed on the inactive list because of a court backlog. It was not until the hearing before the Ethics Committee that Gutkowski learned that his case had been dismissed on June 20, 1978.

Respondent had been served with the Gutkowski ethics complaint on April 6, 1979. He never filed an answer.

### III. *Chatman*

Geane T. Chatman retained respondent on December 15, 1977 to represent him in a divorce action instituted by his wife. After the divorce became final on February 21, 1979, respondent refused to furnish his client with a copy of the final judgment despite repeated requests. Moreover, respondent never filed an answer to the ethics complaint.

### IV. *Tornvall*

Respondent was retained to represent two daughters of decedent Werner E. Tornvall. The daughters had accepted distribution of the decedent's assets under an administration proceeding prior to discovery of his will. As part of a settlement respondent had agreed to be named as substitute administrator for the sole purpose of converting the decedent's bonds into cash and distributing the monies in accordance with the settlement.

Thereafter respondent failed or refused to proceed to qualify as substitute administrator, impeding the settlement of the estate. Respondent failed to respond to numerous phone calls and mail.

Respondent never filed an answer to the ethics complaint.

### V. *Reddick*

In September, 1976, Jessie Reddick retained respondent to represent him to prosecute a divorce action. Respondent accept-

ed a retainer, but did not file a complaint and disregarded frequent requests from the client for information as to the status of the case.

Respondent never filed an answer to the ethics complaint.

### VI. *Garcia Corp.*

Respondent purchased from Garcia Corp. some office furniture for $1,738.00. He paid for it with a personal check dated April 7, 1979. The check was dishonored for "insufficient funds."

Respondent never filed an answer to the ethics complaint.

### VII. *Ozawa*

Takashi Ozawa retained respondent to represent him in connection with the purchase of premises in New Milford, New Jersey. Respondent retained $6,095 from the closing proceeds to satisfy the lien of a mortgage held by the First Savings and Loan Association.

Respondent converted and applied these funds to the mortgage on his own home.

Respondent did not answer the ethics complaint.

### VIII. *Scott*

During the review of these matters before the Disciplinary Review Board, respondent also admitted that he had diverted approximately $18,000 of trust funds belonging to a Mr. Scott. These funds were also used by respondent toward payment of the mortgage on his own home.

### *Discussion*

The Disciplinary Review Board recommended that respondent be disbarred. We agree. Respondent's pattern of neglect of and misrepresentation to his clients was egregious. DR1–102(A)(4); DR1–102(A)(5). Such conduct affects the confidence of the public in the bar and in the administration of justice. The attorney-client relationship is a fiduciary one, involving the highest trust and confidence. It is patently uneth-

ical to advise a client as to facts which the attorney knows are not correct. *In re Lanza,* 24 *N.J.* 191, 196 (1957); *In re Beery,* 19 *N.J.* 422 (1955); *In re Johnson,* 10 *N.J.* 500 (1952). The same cavalier attitude shown to his clients was repeated in these proceedings. Respondent ignored the ethics complaints served on him and the notices of the ethics hearings. Moreover, he issued a bad check, conduct which is a disorderly persons offense under *N.J.S.A.* 2C:21–5. DR1–102(A)(3). Much more serious, however, was his misappropriation of clients' funds for his own use. *In re Wilson,* 81 *N.J.* 451 (1979); DR9–102. Respondent's counsel has advised us that respondent had served as a public defender and on a municipal rent board and was a personable and respected member of the community. However, upon consideration of all the circumstances, we are constrained to conclude that respondent be disbarred.

Respondent is also required to reimburse the Administrative Office of the Courts for appropriate administrative costs, including production of transcripts.

Respondent's name will be stricken from the rolls.

*For disbarment*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK and O'HERN—6.

*Opposed*—None.

### ORDER

It is ORDERED that CALLIS N. BROWN of Teaneck be disbarred and that his name be stricken from the roll of attorneys of this State, effective immediately; and it is further

ORDERED that CALLIS N. BROWN be and hereby is permanently restrained and enjoined from practicing law; and it is further

ORDERED that respondent reimburse the Administrative Office of the Courts for appropriate administrative costs, including production of transcripts; and it is further

ORDERED that respondent comply with all the regulations of the Disciplinary Review Board governing suspended, disbarred or resigned attorneys.