SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

**State v. Terrence Miller (A-35-11) (068558)**

**Argued September 11, 2012 -- Decided October 2, 2013**

**PATTERSON, J., writing for a majority of the Court.**

At issue in this appeal is the propriety of the trial court's denial of a request for adjournment by a defendant who met his appointed counsel for the first time on the day of trial.

Defendant was indicted on drug charges. His privately retained attorney appeared at the initial trial court hearing, during which a July 16, 2007 trial date was set. The trial did not proceed on that day for unknown reasons. Defendant proceeded pro se at the next hearing and the subsequent trial date, September 19, 2007, was also adjourned for unknown reasons. Defendant was then assigned a public defender. The court set December 10, 2007, as the hearing date for defendant's motion to suppress. In late November 2007, defendant's public defender informed the court that she could not try the case. The Mercer County Office of the Public Defender (OPD), however, did not formally request an adjournment for change of counsel. On Thursday, December 6, 2007, defendant's new public defender was told that he was being transferred from the OPD's juvenile unit to a new trial team and that he would serve as defendant's trial counsel, with trial expected to begin on the following Monday, December 10, 2007. Defendant's attorney had nineteen years of legal experience, including some experience in criminal cases, but had not tried an adult criminal case in seven years. Defendant's attorney immediately went to the trial judge's chambers and informally requested that the trial be adjourned due to the reassignment. The trial judge denied his request. Between the afternoon of December 6, 2007, and December 10, 2007, defendant's attorney spent ten to eleven hours preparing for trial. He had no contact with defendant.

On Monday morning, December 10, 2007, defendant's counsel and defendant conferred for about fifty-five minutes in an empty stairwell at the courthouse before the suppression hearing. When the proceedings commenced, counsel requested an adjournment, explaining his client's "concern" about the circumstances and that the "rapport" between attorney and client could not be established on the first day of their relationship. Defendant's counsel also acknowledged, however, that he had an opportunity to "review and prepare" for trial. The trial court denied defendant's adjournment request. It explained that the case had been listed for trial for several months, that the case was a non-complex drug prosecution, that after the suppression hearing counsel would have the remainder of the day to prepare for the commencement of trial the following day, Tuesday, December 11, 2007, and that after the first day of trial the case would not resume until Friday, December 14, 2007, leaving the defense substantial time to prepare its case. The trial judge concluded that defendant was not prejudiced. After the suppression hearing, during which the motion was denied, defendant and his attorney met for approximately one hour at the attorney's office. Trial commenced the next day and the jury ultimately convicted defendant.

In a split decision, an Appellate Division panel upheld the conviction, holding that the trial court's denial of defendant's application to adjourn the trial date did not warrant reversal in the absence of a finding of ineffective assistance of counsel or a showing of prejudice. State v. Miller, 420 N.J. Super. 75 (App. Div. 2011). A member of the panel dissented, maintaining that the trial court's decision violated constitutional standards and principles of fundamental fairness notwithstanding defendant's failure to demonstrate that he was prejudiced by the trial court's decision. Defendant appealed as of right. R. 2:2-1(a)(2).

**HELD**: The trial judge's denial of an adjournment did not violate defendant's constitutional right to effective representation, was not an abuse of discretion, and did not violate principles of fundamental fairness.

1. In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-pronged test to determine whether a defendant received his constitutional right to effective assistance of counsel. The first prong requires a showing of deficient performance by counsel and the second prong requires a showing that the deficient performance prejudiced the defense. In United States v. Cronic, 466 U.S. 648 (1984), the United States Supreme Court reiterated the second prong with the caveat that there are "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." With the exception of the unusual circumstance in which prejudice to the defendant is self-evident under Cronic, a defendant must satisfy

1

both prongs of the Strickland test.  In State v. Fritz, 105 N.J. 42 (1987), this Court adopted the Strickland and Cronic standard when analyzing the right to counsel under the New Jersey Constitution.  Since Fritz, this Court has never presumed prejudice under Cronic in a situation analogous to this case, in which the defendant was represented by competent counsel with no conflict of interest. (pp. 17-25)

2.  Defendant seeks to extend the presumption of prejudice recognized by Cronic to a trial court's deprivation of a defendant's opportunity to develop a rapport with his counsel.  That proposed expansion implicates the scope of the right to counsel of one's choice and the existence of a right to a meaningful attorney-client relationship. A defendant's Sixth Amendment right to counsel of one's choice does not extend to defendants who require counsel to be appointed for them.  United States v. Gonzalez-Lopez, 548 U.S. 140 (2006).  The right to counsel guaranteed by the New Jersey Constitution has never been extended beyond the federal guarantee.  Therefore, defendant's right to be represented did not entail the right to a public defender of his choice.  In addition, although the right to counsel requires that the attorney be effective and available, which includes open and free communication, that right does not require an interaction between attorney and client that gives rise to a "meaningful relationship" or that rises to the level of a "rapport."  Morris v. Slappy, 461 U.S. 1 (1983).  Therefore, the extraordinary deprivation of the assistance of counsel needed to trigger a presumption of prejudice under Cronic is not present here. (pp. 25-30)

3.  Broad discretion must be granted to a trial court on matters of continuances because they implicate a trial court's authority to control its own calendar.  This Court has not previously considered the standard that a trial judge should apply when a criminal defendant requests an adjournment to confer with newly-assigned counsel.  In State v. Hayes, 205 N.J. 522 (2011), in the context of a defendant's request for an adjournment to retain a new attorney, the Court held that two conditions must exist to reverse a conviction based on a denial of an adjournment:  (1) the judicial action must have been clearly unreasonable in the light of the surrounding circumstances and (2) the ruling must have prejudiced the complaining party.  The Hayes Court explained that deciding a defendant's request for an adjournment to retain new counsel involves a fact-sensitive inquiry that requires the balancing of the following factors: the length of the requested delay; requests for and grants of other continuances; the inconvenience to the litigants, witnesses, counsel and the court; whether the requested delay is for legitimate reasons; whether defendant contributed to the need for a continuance; whether other competent counsel was prepared to try the case; the existence and scope of prejudice; and the complexity of the case.  The Hayes analytical framework is equally applicable to this case. (pp. 30-34)

4.  The Hayes balancing test, applied to the record of this case, does not decisively favor either the grant or the denial of the requested adjournment.  Because either decision arguably would have been a proper exercise of the trial court's discretion, the trial court's denial of an adjournment was not clearly unreasonable in the light of the surrounding circumstances.  In addition, there was no showing of prejudice.  Therefore, the trial judge's denial of the requested adjournment was not an abuse of his broad discretion under the Hayes test and did not violate defendant's constitutional right to effective representation under the Strickland/Fritz test. (pp. 34-39)

5. The doctrine of fundamental fairness is an integral part of due process and is used in rare cases in which the defendant would be subject to oppression, harassment, or egregious deprivation absent its application.  This is not one of those rare cases.  Defendant was not deprived of competent counsel.  He had a meeting with his attorney, albeit one constrained in duration and conducted in a less than optimal location, prior to his suppression hearing.  Following that hearing and before the commencement of trial the next day, defendant met in private with his counsel at the attorney's office.  The attorney claimed he was prepared and conducted a vigorous defense, and no prejudice was found.  Therefore, there was no oppression, harassment, or egregious deprivation in this case. (pp. 39-41)

The judgment of the Appellate Division is **AFFIRMED**.

**JUSTICE ALBIN, DISSENTING**, expresses the view that defendant was denied his constitutional rights to the effective assistance of counsel and to a fair trial.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA and HOENS join in JUSTICE PATTERSON's opinion.  JUSTICE ALBIN filed a separate, dissenting opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

TERRENCE MILLER,

    Defendant-Appellant.


        Argued September 11, 2012 – Decided October 2, 2013

        On appeal from the Superior Court, Appellate
        Division, whose opinion is reported at 420
        N.J. Super. 75 (2011).

        Amira R. Scurato, Assistant Deputy Public
        Defender, argued the cause for appellant
        (Joseph E. Krakora, Public Defender,
        attorney).

        Dorothy A. Hersh, Assistant Prosecutor,
        argued the cause for respondent (Joseph L.
        Bocchini, Jr., Mercer County Prosecutor).

        Alexander R. Shalom argued the cause for
        amicus curiae American Civil Liberties Union
        of New Jersey Foundation (Edward L. Barocas,
        Legal Director, attorney).

        Carol M. Henderson, Assistant Attorney
        General, argued the cause for amicus curiae
        Attorney General of New Jersey (Jeffrey S.
        Chiesa, Attorney General, attorney).

        Peter J. Gallagher submitted a brief on
        behalf of amicus curiae Criminal Defense
        Lawyers of New Jersey (Porzio, Bromberg &
        Newman, attorneys).

    JUSTICE PATTERSON delivered the opinion of the Court.

By virtue of a reassignment within the Mercer County Office of the Public Defender (OPD), defendant Terrence Miller did not meet his attorney until the morning on which his trial was scheduled to begin. The attorney advised the court he was prepared to proceed with the trial but noted defendant's concern that defendant and his counsel had not had sufficient time together prior to the commencement of the proceeding. On defendant's behalf, the attorney asked the trial court to adjourn the trial so that client and counsel could confer and plan the defense. The trial court denied defendant's application for an adjournment and proceeded that morning with the hearing on defendant's suppression motion. The judge denied the suppression motion, and defendant's trial began the following day. At trial, the jury convicted defendant of two drug charges.

Defendant appealed, claiming he was deprived of his constitutional right to effective assistance of counsel. In a split decision, an Appellate Division panel upheld the conviction, holding that the trial court's denial of defendant's application to adjourn the trial date did not warrant reversal in the absence of a finding of ineffective assistance of counsel or a showing of prejudice. State v. Miller, 420 N.J. Super. 75, 78 (App. Div. 2011). A member of the panel dissented, maintaining that the trial court's decision violated

constitutional standards and principles of fundamental fairness notwithstanding defendant's failure to demonstrate that he was prejudiced by the trial court's decision. Id. at 99 (Fuentes, J.A.D., dissenting).

Defendant appealed as of right to this Court. R. 2:2-1(a)(2). He argued that prejudice should be presumed when a trial court's denial of an adjournment motion constrains a criminal defendant's opportunity to develop a rapport with his counsel. After briefing and oral argument, this Court remanded the matter to develop a factual record with respect to defendant's opportunity to confer with his counsel before the trial court's hearing on the suppression motion. Following an evidentiary hearing, the judge on remand submitted factual findings with respect to defense counsel's opportunity to prepare for the trial and the setting and duration of defendant's first meeting with his counsel prior to the suppression hearing.

Following a supplementation of the record ordered by this Court, we affirm the Appellate Division. We apply the principles set forth in State v. Hayes, 205 N.J. 522, 537-38 (2011), governing a trial court's exercise of its discretion to grant or deny adjournments. We hold that when a defendant seeking an adjournment asserts an inadequate opportunity to confer with new counsel, the trial court should consider the

3

factors enumerated in Hayes, carefully weighing the competing interests raised by the factual setting of the individual case. Id. at 538 (citing State v. Furguson, 198 N.J. Super. 395, 402 (App. Div.), certif. denied, 101 N.J. 266 (1985)). We reiterate the rule articulated in Hayes: a trial court's abuse of discretion in denying an adjournment request does not require reversal absent a showing of prejudice. Id. at 537-39. We decline to adopt the inflexible rule advocated by defendant, which would mandate reversal in the event of such an abuse of the trial court's discretion regardless of whether the defendant made a showing of prejudice.

Applied here, the Hayes balancing test does not warrant the reversal of defendant's conviction. Given the late substitution of counsel, for which defendant was not accountable, and defendant's limited opportunity to confer with his new attorney prior to the suppression motion, it would have been preferable for the trial judge to have postponed the commencement of the suppression hearing. The judge's denial of the adjournment, however, did not constitute an abuse of discretion, in light of the history of the case, the defendant's brief meeting with his counsel before the pretrial hearing and the newly-appointed attorney's representation that he was prepared to proceed. We hold that the trial court's decision offended neither

constitutional norms nor principles of fundamental fairness. Accordingly, we affirm the judgment of the Appellate Division.

I.

This case arose from surveillance conducted by the Trenton Police Department on August 4, 2006. Acting on an informant's tip that an individual was selling drugs at a particular location, a police officer observed a woman approach the suspect under surveillance. The officer watched through binoculars as the suspect crossed the street, walked to the window of a residence and reached into an area next to an air conditioner that was installed in the window. The suspect then returned to the woman and handed her an object for which she gave him money in exchange.

The officer called for an arrest unit. While waiting for that unit's arrival, the officer observed a man, later identified as Joseph McKinney, approach the suspect. The suspect crossed the street again, approached the same window and retrieved objects adjacent to the air conditioner. The man returned to McKinney, handed him the objects and collected money from him. The suspect then left the scene.

As two officers from an arrest unit arrived, McKinney threw "a quantity of off-white rock-like substance" on the ground, and the officers arrested him. The officers retrieved the bag, which contained 0.09 grams of crack cocaine. Ten minutes later,

5

the officer who had conducted the surveillance saw a man, whom he identified as the same suspect he had seen exiting a Cadillac in which he was a passenger, on the same corner previously under surveillance. Officers arrested the suspect, later identified as defendant. The officers retrieved a bag from the area near the air conditioner, which contained 7.29 grams of crack cocaine. One of the officers conducted a search incident to arrest and found $790 in defendant's possession.

The indictment charged defendant with two counts of third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1), two counts of third-degree possession of a CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1), two counts of second-degree possession of a CDS with intent to distribute on or near a public park, N.J.S.A. 2C:35-7.1(a), one count of third-degree distribution of CDS, N.J.S.A. 2C:35-5(a)(1), and one count of second-degree distribution of CDS on or near a public park, N.J.S.A. 2C:35-7.1(a).

Defendant privately retained an attorney, and that attorney appeared before the trial court at a May 14, 2007 hearing. The trial judge set a July 16, 2007 trial date. The trial did not proceed on that day for reasons not revealed by the record. On September 10, 2007, the date of the next hearing, defendant proceeded pro se. A second trial date was set for September 19, 2007, but it was also adjourned, again for reasons unexplained

6

in the record. Prior to the next scheduled court hearing on October 29, 2007, defendant was assigned a public defender. At that hearing, the court set December 10, 2007, as the date for a hearing on defendant's motion to suppress. For unknown reasons, defendant's initial public defender was unable to serve as defendant's trial counsel; sometime in late November 2007, his initial public defender informed the court that she would not be able to try the case. The Mercer County OPD, however, never formally requested an adjournment for change of counsel.

Defendant's new attorney was a public defender with nineteen years of experience in legal practice, including some experience in criminal cases.[1] On Thursday, December 6, 2007, defendant's new attorney was informed by his supervisors at the Mercer County OPD that he would be transferred from his current assignment in the Mercer County OPD's juvenile unit to a trial team responsible for cases overseen by the trial judge in this case. The attorney was told that day that he would serve as defendant's trial counsel and that defendant's trial was expected to begin on the following Monday, December 10, 2007. It would be his first adult criminal trial in seven years. Defendant's attorney, concerned that he was being assigned a

---

[1] The facts regarding the new attorney's involvement in this case between his assignment on December 6, 2007 and the suppression hearing were developed by the judge on remand at the evidentiary hearing that was directed by this Court following oral argument.

case with an imminent trial date, immediately went to the trial judge's chambers, explained the reassignment and informally requested that the trial date be adjourned. The trial judge denied his request and advised him that the case would proceed to trial as scheduled.

Defendant's counsel returned to his office and prepared his trial binder, working for ninety minutes on the case that afternoon. The next day, Friday, December 7, 2007, counsel worked on defendant's case for approximately two-and-one-half hours. That day, the attorney tried to reach defendant by telephone using contact information provided by the Mercer County OPD but was unsuccessful. He was unaware that he could enlist the services of a Mercer County OPD investigator to assist him in locating his new client.

The following day, Saturday, December 8, 2007, defendant's counsel conducted a three- to four-hour review of relevant evidence rules and suppression law to prepare himself for proceedings in adult criminal court; he did not complete billing records for this review because of the general nature of his work. On Sunday, December 9, 2007, counsel spent approximately three hours reviewing discovery and preparing to cross-examine the State's witnesses. According to the attorney's testimony and billing records, he spent a total of ten to eleven hours

preparing for trial.  He had no contact with defendant in the days leading up to trial.

On Monday morning, December 10, 2007, defendant's counsel arrived at the courthouse before 9:00 a.m. and met defendant. According to counsel, the trial court delayed the commencement of proceedings to afford him "an opportunity to at least speak to the client . . . for the first time."  After introducing themselves, counsel and defendant conferred for approximately twenty-five minutes in a window area of an empty stairwell between two floors of the courthouse.  The attorney described the location of their initial meeting as "the only private area" available and recalled the "awkwardness" of the circumstances. The attorney testified that he and defendant discussed requesting an adjournment, among other procedural matters. Counsel briefly left defendant to speak with the prosecutor to discuss a possible plea agreement, but their negotiations were unsuccessful.  Defendant and his attorney then met privately for approximately one-half hour.

At approximately 10:30 a.m., following counsel's second conversation with defendant, the trial judge commenced the proceedings.  Before the hearing on defendant's motion to suppress, the prosecutor dismissed three counts of the indictment.  Subsequently, counsel requested an adjournment and stated on the record that his contact that morning had been "the

first opportunity I've had to meet with [my client]." The attorney explained his client's "concern" about the circumstances and commented that the "rapport" between attorney and client could not be established on the first day of their relationship, with a suppression hearing about to begin. Defendant's counsel acknowledged that he had an opportunity to "review and prepare" for trial and that the trial court intended to begin the hearing as scheduled. He stated, however, that he thought "Mr. Miller would still prefer that this matter not proceed at this time." The prosecutor did not object to the application for an adjournment.

The trial court denied defendant's request for an adjournment. It explained that the case had been listed for trial for several months. Citing Rule 1:11, which governs withdrawal or substitution of counsel, the trial judge informed counsel that he had put the Mercer County OPD on notice that an adjournment was unlikely to be granted. He commented that the case was a simple drug prosecution involving "nothing difficult or complex" and that after the suppression hearing, counsel would have the remainder of the day to prepare for the commencement of trial the following day, Tuesday, December 11, 2007. The judge noted that after the first day of trial the case would not resume until Friday, December 14, 2007, leaving the defense substantial time to prepare its case. The trial

10

judge conceded that defendant was somewhat uncomfortable because he had been working with Ms. Montgomery but concluded that "the defendant [wa]s prejudiced in no way."

The trial court commenced the hearing on defendant's suppression motion. In that motion, defendant argued that there had not been probable cause for his arrest and sought suppression of currency found on his person when he was arrested. After one of the police officers testified about the circumstances of defendant's arrest, defendant took the stand. He testified that he was arrested shortly after being dropped off by a friend after a shopping trip. Defendant stated that he was "grabbed" by police in a corner store, pulled outside and searched, along with several others detained by police. Defendant contended that an officer approached him with "a bag of something" and that the officer rejected defendant's attempt to disclaim ownership of the bag with the comment, "it is yours now." Defendant testified that one of the officers then arrested him. He also testified that it would have been impossible for the police officer conducting surveillance to see either the area where defendant was arrested or the area in which the air conditioner was located because trees blocked the view. In order to explain his possession of $790 at the time of his arrest, defendant testified he was a professional boxer, a minister and a car salesman, and further noted he usually

11

carries more cash.  Defendant said that he had witnesses who were prepared to testify on his behalf, including the person who had driven the Cadillac and dropped defendant off immediately before his arrest.

The trial court denied defendant's motion, finding the police officer more credible than defendant.  The prosecutor objected to defendant's alibi defense, which had not been disclosed in a notice of alibi pursuant to Rule 3:12-2, and defendant's counsel promised to "address those issues."  The trial court adjourned the proceeding for the day.  After leaving court, defendant and his attorney met for approximately one hour at the attorney's office.[2]

Defendant's trial commenced on Tuesday, December 11, 2007, with jury selection, opening statements and the State's presentation of its witnesses: two of the investigating police officers.  The defense commenced its case on Friday, December 14, 2007.  Defendant did not testify.  McKinney testified on defendant's behalf, stating that he had bought cocaine from someone other than defendant on the day of defendant's arrest.  A second witness testified that she observed defendant's arrest, watched officers retrieve an item from across the street,

---

[2] The judge on remand did not determine how much time defendant's attorney spent completing his trial preparation, as this Court did not require inclusion of such information as part of its remand order.

overheard defendant deny ownership of that item and heard an officer say "[i]t is yours now." Another witness testified that she saw defendant get out of a Cadillac and go into a store. The jury convicted defendant of all remaining charges. After the jury rendered its verdict, defendant blurted out that his brother, not he, had sold the drugs at issue.

At his sentencing hearing on June 30, 2008, defendant was represented by the privately-retained attorney whom he had hired and dismissed prior to trial, but argued pro se motions on his own behalf. He told the trial judge that he did not meet his trial attorney until the day of the suppression hearing and that both he and his attorney had been "unprepared." He said that he had wanted to present evidence that the suspect observed by police was someone else. The trial court denied defendant's motion for a new trial, Rule 3:20-1, denied the State's motion for an extended term, Rule 3:21-4(e), merged two of the offenses, and sentenced defendant to a five-year term of incarceration with a two-year period of parole ineligibility.[3]

Defendant appealed.[4] An Appellate Division majority held that defendant had not demonstrated that he had ineffective

---

[3] Defendant also filed a pro se motion for judgment of acquittal, but the record does not reveal the trial court's ruling on that motion.
[4] Defendant initially filed a pro se appeal, but the Appellate Division granted his motion to proceed as an indigent, and he has been represented by the Mercer County OPD in this appeal.

13

assistance of counsel, given the Mercer County OPD's active work on his behalf and the trial court's two-week notice to defendant that the trial would proceed. Miller, supra, 420 N.J. Super. at 78-79. The majority emphasized the trial court's discretion in controlling its calendar and the requirement that a defendant demonstrate prejudice in order to obtain a new trial. Id. at 86-88.

The dissenting judge acknowledged "the absence of direct prejudice." Id. at 99 (Fuentes, J.A.D., dissenting). He maintained, however, that the trial court's denial of an adjournment, compelling the defendant to proceed when he had just met his attorney for the first time, fundamentally offended principles of trial fairness and justice. Id. at 102. He observed that this case raised the specter of a two-tiered system in which indigent defendants are left "at the mercy of staff attorneys beholden to their supervisors." Id. at 103. The dissenting judge disputed the trial court's conclusion that the trial of this case was uncomplicated and asserted that the court has a non-delegable duty to guarantee the administration of justice, requiring reversal of defendant's conviction. Id. at 99-100, 103-04.

Defendant appealed as of right with regard to the issue raised by the dissent. R. 2:2-1(a)(2).

II.

14

Defendant asserts that the trial court deprived him of counsel of his choice in violation of U.S. Const. amend. VI and N.J. Const. art. I, ¶ 10. He contends that the trial judge did not properly exercise his discretion in denying the requested adjournment because that decision was prompted by the judge's annoyance at mismanagement by the Mercer County OPD, for which defendant was not responsible. Defendant urges the Court to hold that he need not demonstrate prejudice because prejudice is presumed when the denial of an adjournment deprives a criminal defendant of his choice of counsel and a fair trial. Alternatively, defendant contends that he has demonstrated prejudice because his testimony at the suppression hearing prompted his decision not to testify at trial and his counsel inadequately prepared his defense in various respects.

The State asserts a trial court has broad discretion to grant or deny adjournments as a component of its authority to control its calendar. It argues that defendants represented by appointed counsel do not have the right to counsel of their choice. The State contends that the panel majority correctly required a showing of prejudice to warrant reversal of defendant's conviction. According to the State, the record of this case precludes any finding of prejudice because defendant and his counsel met prior to trial, defense counsel admittedly had an adequate opportunity to prepare the defense and the case

15

was uncomplicated.  The State argues that while the issue of prejudice is not raised by the Appellate Division dissent, and therefore is not before this Court, defendant has, in any event, failed to make a showing of prejudice.

Amicus curiae the American Civil Liberties Union (ACLU) argues that the trial court's decision constituted an arbitrary insistence on an expeditious trial that violated defendant's right to effective assistance of counsel and represented an abuse of discretion.  ACLU asserts that the trial court's denial of the adjournment precluded defendant and his counsel from establishing an effective attorney-client relationship and that prejudice should be presumed in this setting.  Amicus curiae the Association of Criminal Defense Lawyers of New Jersey (ACDL) argues that defendants must be afforded time to develop trust and confidence in their counsel, which is impossible when an attorney and client who have never met are compelled to proceed. ACDL contends that prejudice should be presumed and urges reversal of defendant's conviction based on principles of due process and fundamental fairness.

Amicus curiae Attorney General of New Jersey (Attorney General) contends that the trial court's denial of defendant's motion for an adjournment did not constitute an abuse of discretion because it was not unreasonable, did not prompt a deficient performance by defense counsel and did not prejudice

16

defendant.  The Attorney General argues that there was no fundamental unfairness in this case because at each stage of the proceedings defendant was represented by competent counsel with no conflict of interest.

### III.

The Court reviews this matter "as an appeal as of right, arising only through the dissent in the Appellate Division." Borough of Sayreville v. 35 Club, L.L.C., 208 N.J. 491, 503 (2012) (citing R. 2:2-1(a)(2)).  Accordingly, "our review is confined to the issue which was the subject of the dissent." Ibid.; accord State v. Allegro, 193 N.J. 352, 371 n.9 (2008). As to all other issues, "certification must be sought separately," Allegro, supra, 193 N.J. at 371 n.9, and no such certification was requested or granted here.

The majority of the panel, Miller, supra, 420 N.J. Super. at 96, and the dissenting judge, id. at 96-97 (Fuentes, J.A.D., dissenting), agreed that defendant had not made a showing that he was prejudiced by the trial court's denial of an adjournment. The panel sharply disagreed as to whether the denial of the adjournment represented an abuse of discretion that warrants a new trial absent a showing of prejudice and whether principles of fundamental fairness require reversal of defendant's conviction.  Id. at 99 (Fuentes, J.A.D., dissenting).  We thus address both issues.

17

We begin with core constitutional principles.  The United States and New Jersey Constitutions guarantee to criminal defendants the right to counsel.  U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."); N.J. Const. art. I, ¶ 10 ("In all criminal prosecutions the accused shall have the right . . . to have the assistance of counsel in his defense.").  As the United States Supreme Court held in United States v. Cronic, 466 U.S. 648, 654, 104 S. Ct. 2039, 2044, 80 L. Ed. 2d 657, 664 (1984), "[t]he special value of the right to the assistance of counsel explains why '[i]t has long been recognized that the right to counsel is the right to the effective assistance of counsel.'"  (second alteration in original) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 1449 n.14, 25 L. Ed. 2d 763, 773 n.14 (1970)).

The Sixth Amendment right to effective assistance of counsel was defined by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  There, the Supreme Court identified two distinct categories of cases in which defendants claim violations of their constitutionally guaranteed right to counsel.  In the first category, a defendant asserts an "actual or constructive denial of the assistance of counsel altogether, as well as claims based on state interference with the ability

18

of counsel to render effective assistance to the accused." Id. at 683, 104 S. Ct. at 2062, 80 L. Ed. 2d at 690.

In the second category, a defendant claims that his counsel failed to provide competent assistance. Id. at 686, 104 S. Ct. at 2064, 80 L. Ed. 2d at 692. For such "actual ineffectiveness" cases, the Supreme Court established its familiar two-pronged test. Id. at 683-87, 104 S. Ct. at 2062-64, 80 L. Ed. 2d at 690-93. The first prong requires a showing of deficient performance by counsel. Id. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693. The Supreme Court declined to impose a "particular set of detailed rules for counsel's conduct," id. at 688-89, 104 S. Ct. at 2065, 80 L. Ed. 2d at 694, establishing instead "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," id. at 689, 104 S. Ct. at 2065, 80 L. Ed. 2d at 694.

The second, or "prejudice," prong of the Strickland test compels a showing that "the deficient performance prejudiced the defense." Id. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693. Accordingly, a defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Ibid., 104 S. Ct. at 2064, 80 L. Ed. 2d at 693. This second prong was reiterated by the Supreme Court in Cronic, supra, 466 U.S. at 658, 104 S. Ct. at 2046, 80 L. Ed. 2d at 667, with the caveat that there are "circumstances

19

that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified."[5] With the exception of the unusual setting in which prejudice to the defendant is self-evident, a defendant must make a showing of prejudice to meet the federal constitutional standard. Strickland, supra, 466 U.S. at 693, 104 S. Ct. at 2067, 80 L. Ed. 2d at 697; Cronic, supra, 466 U.S. at 661-62, 104 S. Ct. at 2048, 80 L. Ed. 2d at 669-70.

This Court has adopted the standard of Strickland and Cronic as the benchmark by which the violation of a right to counsel is measured under the New Jersey Constitution. State v. Fritz, 105 N.J. 42, 58 (1987). In Fritz, the "defendant had only sporadic contact with the Public Defender's Office prior to trial." Id. at 47. After defendant and his first assigned attorney discussed a potential plea bargain, the case was reassigned to another attorney, and "communications broke down." Ibid. Nothing further was done on the defendant's case until the original attorney received a trial notice and confirmed, three days before the trial date, that the trial would proceed

---

[5] Only one of the cases noted by Cronic involved the right to counsel -- Flanagan v. United States, 465 U.S. 259, 262-63, 104 S. Ct. 1051, 1053, 79 L. Ed. 2d 288, 293 (1984) -- but that case did not ultimately decide the Sixth Amendment issue because the Court reversed for lack of jurisdiction, and thus, is not relevant here. In any event, the claim involved the denial of the right to counsel of defendant's choice, unlike the circumstances here. Ibid., 104 S. Ct. at 1053, 79 L. Ed. 2d at 293.

20

as scheduled.  Id. at 47-48.  No witnesses had been contacted and the transcript of the probable cause hearing had not been ordered.  Id. at 48.  Nonetheless, the trial court denied a motion for an adjournment, noting that only jury selection would occur on the first day of trial.  See ibid.  The defendant was convicted, and the Appellate Division affirmed his conviction on two of the three offenses.  Ibid.

This Court applied the test of Strickland and Cronic.  Id. at 61.  It rejected defendant's claim that he was denied effective assistance of counsel, observing that counsel was familiar with the case from his involvement with the proposed plea agreement and that "counsel had at least one full day, and potentially three full days" to prepare for a case that "did not present overly difficult or complicated issues to an experienced criminal trial attorney."  Id. at 63.

In that setting, the Court held that the presumption of prejudice recognized in Cronic did not apply:

> [A]s Cronic and the cases decided after it make clear, the obstacles facing defendant's attorney in terms of inability to prepare are insufficient to warrant a presumption of prejudice and to excuse the need for an inquiry into the actual conduct of the trial.  Indeed, no federal court has reversed a criminal conviction, pursuant to Cronic, based solely on the ground of inadequate attorney preparation, whether attributable to the trial court's refusal of a continuance or not.

21

[Id. at 61-62 (footnote omitted).]

The Court further noted that "[r]eversals following Cronic have arisen only from more significant impairments of adequate representation than usually occur from lack of preparation." Id. at 62. It commented that "[s]uch circumstances involve the complete denial of the right to counsel altogether, actual or constructive." Id. at 53. In contrast, the Court was satisfied in Fritz "that the trial court's denial of defendant's motion for a continuance . . . to enable defense counsel to prepare did not completely vitiate the 'crucible of meaningful adversarial testing.'" Id. at 63 (quoting Cronic, supra, 466 U.S. at 656, 104 S. Ct. at 2045, 80 L. Ed. 2d at 666). In short, when the defendant had the benefit of experienced counsel, notwithstanding that counsel's limited opportunity to prepare the defense, the Court declined to presume prejudice.

Since Fritz, this Court has presumed prejudice under Cronic in only two cases, State v. Tyler, 176 N.J. 171 (2003), and State v. Cottle, 194 N.J. 449 (2008). In Tyler, supra, 176 N.J. at 173, the Court considered the trial judge's decision to sanction a prospective juror who had expressed bias by forcing her to sit through a day of trial as a non-deliberating juror. Reversing the defendant's conviction and remanding for a new trial, the Court noted that "'[t]here are times, even in the absence of prejudice to a defendant, when it is essential to

22

insure future observance of a prescribed practice safeguard or the vindication of a fundamental principle that courts should not hesitate to reverse." Id. at 182-83 (quoting State v. Wagner, 180 N.J. Super. 564, 567 (App. Div. 1981)).

In Cottle, supra, 194 N.J. at 452, the Court presumed prejudice and found a per se conflict of interest when an attorney representing a juvenile in an adult criminal case was simultaneously under indictment in the same county and was being prosecuted by the same office as his client. The Court relied on State v. Bellucci, 81 N.J. 531, 543 (1980), in which the Court previously held that simultaneous representation of a codefendant by an attorney or a lawyer associated with that attorney amounts to a per se conflict of interest and presumed prejudice. Cottle, supra, 194 N.J. at 467, 471. The Court concluded that "[t]he same concerns about divided loyalties present in Bellucci" were present in the case. Id. at 471. It reversed the conviction and remanded for a new trial finding "[t]he undisclosed conflict . . . denied the juvenile the effective representation of counsel." Id. at 452.

In contrast, this Court has never presumed prejudice under Cronic in a situation analogous to this case, in which the defendant was represented by competent counsel with no conflict of interest. In State v. Bey, 161 N.J. 233, 254 (1999), cert. denied, 530 U.S. 1245, 120 S. Ct. 2693, 147 L. Ed. 2d 964

23

(2000), the Court found that a defendant's counsel had incompletely prepared the defense of a death penalty case. It rejected, however, the defendant's argument that prejudice should be presumed, noting that "[t]he presumption of prejudice is reserved for cases involving the complete denial of the right to counsel." Id. at 255-56 (citing Fritz, supra, 105 N.J. at 53). In another capital case, State v. Savage, 120 N.J. 594, 617 (1990), the Court rejected a similar claim that a showing of prejudice was unnecessary because of the deficient performance of counsel. The Court explained that "the per se analysis is reserved for those cases in which counsel's performance is so likely to prejudice the accused that it is tantamount to a complete denial of counsel." Id. at 616 (citing Cronic, supra, 466 U.S. at 659, 104 S. Ct. at 2046, 80 L. Ed. 2d at 668; Strickland, supra, 466 U.S. at 692, 104 S. Ct. at 2067, 80 L. Ed. 2d at 696). Indeed, in State v. Dennis, 185 N.J. 300, 301-02 (2005), cert. denied, 547 U.S. 1045, 126 S. Ct. 1629, 164 L. Ed. 2d 342 (2006), this Court recognized a defendant's right to counsel at his probable cause hearing, but it declined to presume prejudice when the defendant was unrepresented by counsel at such a hearing.[6]

---

[6] In an Appellate Division case decided more than thirty years before Strickland, Cronic and Fritz, a panel did not require a showing of prejudice in an ineffective assistance of counsel inquiry. Jablonowski v. State, 29 N.J. Super. 109, 112-13 (App.

24

There is, in short, no authority in this Court for the expansion of the presumption of prejudice beyond the narrow parameters set in <u>Cronic</u>.  To secure reversal of his or her conviction premised upon a claim that his or her attorney was ineffective in conducting the defense, a defendant must satisfy both prongs of the <u>Strickland</u>/<u>Fritz</u> test: counsel's deficient performance and prejudice.  <u>Strickland</u>, <u>supra</u>, 466 <u>U.S.</u> at 687, 693, 104 <u>S. Ct.</u> at 2062, 2067, 80 <u>L. Ed.</u> 2d at 690-91, 697; <u>Fritz</u>, <u>supra</u>, 105 <u>N.J.</u> at 60-61.

IV.

In this case, defendant seeks to extend the presumption of prejudice recognized by <u>Cronic</u> to a new setting: a trial court's claimed deprivation of a defendant's opportunity to develop a rapport with his counsel.  The proposed expansion of the presumption of prejudice implicates federal and state authority addressing two issues: the scope of the right to counsel of one's choice and the existence of a right to a meaningful attorney-client relationship.  We consider those issues in turn.

---

Div. 1953).  There, an attorney was appointed on the morning of trial to represent the defendant and his codefendant, and the trial court denied an application for an adjournment.  <u>Id.</u> at 110-11.  Because <u>Jablonowski</u> was decided long before <u>Strickland</u>, <u>Cronic</u> and <u>Fritz</u>, the panel did not apply the analytical framework that currently governs ineffective assistance of counsel cases.  Further, <u>Jablonowski</u> involved considerations not at issue here because unlike defense counsel in this case, the assigned attorney in that case had no opportunity to prepare a defense for his clients prior to the day of trial.  <u>Id.</u> at 112-13.

25

The United States Supreme Court has recognized a defendant's Sixth Amendment right to "a fair opportunity to secure counsel of his own choice." Powell v. Alabama, 287 U.S. 45, 53, 53 S. Ct. 55, 58, 77 L. Ed. 158, 162 (1932); accord Wheat v. United States, 486 U.S. 153, 165, 108 S. Ct. 1692, 1700, 100 L. Ed. 2d 140, 153 (1988) (Marshall, J., dissenting). "Deprivation of the right is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received." United States v. Gonzalez-Lopez, 548 U.S. 140, 148, 126 S. Ct. 2557, 2563, 165 L. Ed. 2d 409, 419 (2006).

A defendant's Sixth Amendment right to counsel of his or her choice, however, "does not extend to defendants who require counsel to be appointed for them." Id. at 151, 126 S. Ct. at 2565, 165 L. Ed. 2d at 421 (citing Wheat, supra, 486 U.S. at 159, 108 S. Ct. at 1697, 100 L. Ed. 2d at 148-49; Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624, 109 S. Ct. 2646, 2652, 105 L. Ed. 2d 528, 541 (1989)). The right to counsel guaranteed by the New Jersey Constitution, N.J. Const. art. I, ¶ 10, has never been extended beyond the federal guarantee in this regard. As the Appellate Division noted in State v. Wiggins, 291 N.J. Super. 441, 451-52 (App. Div.), certif. denied, 146 N.J. 568 (1996):

26

> The Sixth Amendment and our Constitution guarantee that an individual charged with a crime has the right to an attorney. Our organic law does not command, however, that he be given the attorney of his choice. Nor does it require that his legal representation be changed at his whim.
>
> [(citing State v. Kordower, 229 N.J. Super. 566, 576 (App. Div. 1989)); accord State v. Harris, 384 N.J. Super. 29, 59 (App. Div. 2006), certif. denied, 188 N.J. 357 (2006).]

In the setting here, in which defendant sought and obtained assigned counsel, defendant's right to be represented did not entail the right to a public defender of his choice.

The right to counsel afforded by the federal and state constitutions, however, does require that the attorney be "effective as well as available." State v. Sugar, 84 N.J. 1, 17 (1980) (citing Cuyler v. Sullivan, 446 U.S. 335, 344-45, 100 S. Ct. 1708, 1716, 64 L. Ed. 2d 333, 343-44 (1980); Tollett v. Henderson, 411 U.S. 258, 266-67, 93 S. Ct. 1602, 1608, 36 L. Ed. 2d 235, 243 (1973); McMann, supra, 397 U.S. at 771 n.14, 90 S. Ct. at 1449 n.14, 25 L. Ed. 2d at 773 n.14). A criminal defense attorney must not be hindered by conflicts of interest that could compromise his or her duty to a client; the "representation must be 'untrammeled and unimpaired,' [the lawyer's] loyalty undivided." Bellucci, supra, 81 N.J. at 538; accord Sugar, supra, 84 N.J. at 17; see also Wood v. Georgia, 450 U.S. 261, 271, 101 S. Ct. 1097, 1103, 67 L. Ed. 2d 220, 230

27

(1981) ("Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest."); Cuyler, supra, 446 U.S. at 349, 100 S. Ct. at 1719, 64 L. Ed. 2d at 347 ("[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice."). Further, "[i]t has been said that the right to counsel 'would be meaningless if the defendant were not able to communicate freely and fully with the attorney.'" State v. Land, 73 N.J. 24, 30 (1977) (quoting M. Freedman, Lawyers' Ethics In An Adversary System 8 (1975)); see also Weatherford v. Bursey, 429 U.S. 545, 554, 97 S. Ct. 837, 843, 51 L. Ed. 2d 30, 39 (1977) (noting Sixth Amendment could be violated by prosecution receipt of defense trial preparation details acquired from informant present at defendant's meeting with counsel); United States v. Costanzo, 740 F.2d 251, 254-57 (3d Cir. 1984) (applying Weatherford but finding no Sixth Amendment violation).

A criminal defendant's constitutional guarantee of loyal counsel and open communication, however, does not equate to a guarantee of attorney-client rapport. In Morris v. Slappy, 461 U.S. 1, 5-6, 103 S. Ct. 1610, 1613, 75 L. Ed. 2d 610, 616 (1983), an indigent defendant's assigned counsel had emergency surgery, necessitating the substitution of new counsel six days

28

before trial and prompting the defendant to move for an adjournment. Substituted counsel represented that he was prepared for trial. Id. at 6, 103 S. Ct. at 1614, 75 L. Ed. 2d at 616. He did not join his client's application for an adjournment. See ibid., 103 S. Ct. at 1614, 75 L. Ed. 2d at 616. The trial judge denied the motion. Id. at 7, 103 S. Ct. at 1614, 75 L. Ed. 2d at 617. The United States Court of Appeals for the Sixth Circuit reversed, holding that the trial court had "ignored respondent's Sixth Amendment right to a 'meaningful attorney-client relationship' and hence violated respondent's right to counsel." Id. at 11, 103 S. Ct. at 1616, 75 L. Ed. 2d at 619.

The United States Supreme Court reversed, holding:

> The Court of Appeals' conclusion that the Sixth Amendment right to counsel "would be without substance if it did not include the right to a meaningful attorney-client relationship" is without basis in the law. . . . No court could possibly guarantee that a defendant will develop the kind of rapport with his attorney -- privately retained or provided by the public -- that the Court of Appeals thought part of the Sixth Amendment guarantee of counsel. Accordingly, we reject the claim that the Sixth Amendment guarantees a "meaningful relationship" between an accused and his counsel.
>
> [Id. at 13-14, 103 S. Ct. at 1617, 75 L. Ed. 2d at 621 (footnote omitted) (quoting Slappy v. Morris, 649 F.2d 718, 720 (9th Cir. 1981)).]

29

There is, in short, no federal constitutional right to a "meaningful relationship" between a criminal defendant and his or her attorney.

Accordingly, the constitutional guarantee of effective assistance of counsel mandates competent and loyal service to the client in a setting that does "not 'preclude the giving of effective aid in the preparation and trial of the case.'" Fritz, supra, 105 N.J. at 57 (quoting Sugar, supra, 84 N.J. at 17). The right to effective assistance does not, however, require a court to accommodate a defendant's preference of assigned counsel. Nor does it require an interaction between attorney and client that gives rise to a "meaningful relationship" or a partnership between attorney and client that rises to the level of a "rapport." Morris, supra, 461 U.S. at 13-14, 103 S. Ct. at 1617, 75 L. Ed. 2d at 621.

V.

These constitutional principles set the backdrop for our review of the trial court's denial of defendant's request for an adjournment to afford him and his counsel additional time to confer. A motion for an adjournment implicates a trial court's authority to control its own calendar and is reviewed under a deferential standard. As the United States Supreme Court held in Morris, "broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary

30

'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." Morris, supra, 461 U.S. at 11-12, 103 S. Ct. at 1616, 75 L. Ed. 2d at 620 (quoting Ungar v. Sarafite, 376 U.S. 575, 589, 84 S. Ct. 841, 849, 11 L. Ed. 2d 921, 931 (1964)).

This Court has not previously considered the standard that a trial judge should apply when a criminal defendant requests that a trial be adjourned so that he or she may have more time to confer with newly-assigned counsel. In the setting of a motion to withdraw a guilty plea, however, this Court recently considered the "intersection of the right to the assistance of counsel with the denial of a criminal defendant's motion for an adjournment." Hayes, supra, 205 N.J. at 536.

In Hayes, the defendant, represented by counsel, pled guilty to robbery and eluding. Id. at 528. On the day he was scheduled for sentencing, the defendant advised the court for the first time that he wanted to file a motion for leave to withdraw his guilty plea before he was sentenced. Id. at 525. The defendant told the judge that he had attempted to retain a new attorney to file the motion, but one prospective counsel had a conflict of interest and another had a scheduling problem. Id. at 525-26. The defendant's prior attorney informed the court that he could not represent the defendant because he was a potential witness in the motion to withdraw the plea. Id. at

31

536-37. The defendant requested an adjournment, which the court denied, and the defendant was compelled to proceed with his motion pro se. Id. at 537.

The Court noted that "whether a trial court should grant or deny a defendant's request for an adjournment to retain counsel requires a balancing process informed by an intensely fact-sensitive inquiry." Id. at 538. It held that when an appellate court reviews a trial court's discretionary determination of a defendant's motion for an adjournment, "'there are two conditions which must exist to warrant'" reversal of the conviction. Id. at 539 (quoting Smith v. Smith, 17 N.J. Super. 128, 132 (App. Div. 1951), certif. denied, 9 N.J. 178 (1952)). First, "'the judicial action must have been clearly unreasonable in the light of the accompanying and surrounding circumstances.'" Ibid. (quoting Smith, supra, 17 N.J. Super. at 133). Second, the ruling must have prejudiced the complaining party. Ibid. By requiring the second condition, the Court reaffirmed the necessity of a showing of prejudice, noting New Jersey law's long recognition of "the notion that '[a] motion for an adjournment is addressed to the discretion of the court, and its denial will not lead to reversal unless it appears from the record that the defendant suffered manifest wrong or injury.'" Id. at 537 (alteration in original) (quoting State v. Doro, 103 N.J.L. 88, 93 (E. & A. 1926)).

To guide trial courts deciding adjournment applications filed by defendants seeking additional time to retain counsel, the Court adopted a case-specific standard originally articulated by the Court of Appeals for the District of Columbia Circuit in United States v. Burton, 584 F.2d 485, 490-91 (D.C. Cir. 1978), cert. denied, 439 U.S. 1069, 99 S. Ct. 837, 59 L. Ed. 2d 34 (1979), and applied by the Appellate Division in Furguson, supra, 198 N.J. Super. at 402. This Court enumerated the relevant factors:

> "Some of the factors to be considered in the balance include the length of the requested delay; whether other continuances have been requested and granted; the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court; whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; whether the defendant has other competent counsel prepared to try the case, including the consideration of whether the other counsel was retained as lead or associate counsel; whether denying the continuance will result in identifiable prejudice to defendant's case, and if so, whether this prejudice is of a material or substantial nature; the complexity of the case; and other relevant factors which may appear in the context of any particular case."
>
> [Hayes, supra, 205 N.J. at 538 (quoting Furguson, supra, 198 N.J. Super. at 402).]

33

The Court noted the need to "'strike a balance between [a trial court's] inherent and necessary right to control its own calendar and the public's interest in the orderly administration of justice, on the one hand, and the defendant's constitutional right to obtain counsel of his own choice, on the other.'" Ibid. (quoting Furguson, supra, 198 N.J. Super. at 402). In Hayes, given the clear prejudice to a defendant deprived of the assistance of counsel at his motion to withdraw his plea, that inquiry compelled a reversal and remand for a new hearing on defendant's motion to withdraw his plea, at which he would be represented by counsel. Id. at 540-41.

Hayes involved an issue not raised by this case: the withdrawal of conflicted counsel that left the defendant effectively "without representation, a status anathema to the fundamental constitutional notions of fairness that must guide criminal proceedings." Id. at 540. The Court's analytical framework, however, is equally relevant to this case, in which we reconcile the trial court's authority to control its docket with the defendant's right to effective representation. The factors articulated in Hayes ensure a careful balancing of the competing considerations at issue in this case, and accordingly, we apply those factors here.

The first factor identified in Hayes, the length of the requested delay, is not developed in the record. In his request

34

for an adjournment, defendant did not specify the length of the delay that he sought, and the trial court did not inquire about the length of the proposed continuance. The second Hayes factor, requests for and grants of other continuances, weighs to some degree in favor of the trial court's denial of the adjournment requested. Although the record does not include the transcripts of all relevant hearings in this matter, it reveals that the December 10, 2007 trial date was at least the third trial date scheduled for this case, and the court's determination was supported by that procedural history.

The third factor, the inconvenience to the litigants, witnesses, counsel and the court is not addressed with precision in the record, except in the trial court's reference to its attempts to advance the case to trial. In the absence of evidence that either the scheduled trial date or the adjournment request caused inconvenience to the parties, witnesses or attorneys, this factor does not weigh in favor of either the grant or the denial of the motion for an adjournment. Cf. Furguson, supra, 198 N.J. Super. at 406 (finding inconvenience weighed against defendant).

The fourth factor, whether the requested delay is for legitimate reasons, provides some support for defendant's position. Defendant premised his request upon a legitimate concern -- the limited time afforded for him to confer with

35

counsel -- and there is no evidence that his argument was mere pretext for delay. The fifth factor, whether defendant contributed to the need for a continuance, similarly weighs in defendant's favor. There is no suggestion on the record that defendant did anything to prompt the Mercer County OPD's substitution of his assigned attorney, and he is not responsible for any administrative errors that may have occurred in that office's handling of his defense. See Hayes, supra, 205 N.J. at 540; but see Furguson, supra, 198 N.J. Super. at 406.

The sixth factor, whether other competent counsel was prepared to try the case, buttresses the trial court's decision to deny the motion to adjourn. Defendant's new counsel, an experienced criminal defense attorney, was assigned to serve as defendant's counsel. While counsel would have benefited from a longer preparation period, he had an adequate opportunity over four days to prepare for the trial and he told the court that he was prepared to proceed. The seventh factor, the existence and scope of prejudice, supports the trial court's decision because there has been no showing that defendant either anticipated or suffered prejudice. Finally, the complexity of the case does not weigh in favor of either the grant or the denial of the adjournment. Notwithstanding the relative brevity of the trial and the familiarity of the issues presented to experienced counsel, the case required thoughtful preparation and planning.

36

Accordingly, the Hayes balancing test, applied in this case, does not decisively favor either the grant or the denial of the requested adjournment.  In this setting, either decision arguably would have been a proper exercise of the trial court's discretion.  We do not find that the trial court's denial of an adjournment prejudiced defendant or was "'clearly unreasonable in the light of the accompanying and surrounding circumstances.'"  Hayes, supra, 105 N.J. at 539 (quoting Smith, supra, 17 N.J. Super. at 132-33).

The dissent postulates a sweeping expansion of existing law.[7]  The traditional benchmark for ineffective assistance of counsel cases -- the United States Supreme Court's decision in Strickland, supra, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693, and this Court's holding in Fritz, supra, 105 N.J. at 58-61 -- requires, without exception, the showing of prejudice that is simply absent here.  As the Court noted in Fritz, "a conclusive presumption of prejudice is inappropriate except in cases exemplified by egregious shortcomings in the

---

[7] Our dissenting colleague is undeterred by defendant's invocation of his ineffective assistance of counsel claim on direct appeal rather than in the appropriate setting for such a claim, an application for post-conviction relief.  See State v. Preciose, 129 N.J. 451, 460 (1992) ("Our courts have expressed a general policy against entertaining ineffective-assistance-of-counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record[,]" and "are particularly suited for post-conviction review.");  accord State v. O'Neal, 190 N.J. 601, 634 (2007).

37

professional performance of counsel." Fritz, supra, 105 N.J. at 61. Under Cronic, supra, 466 U.S. at 658-59, 104 S. Ct. at 2046-47, 80 L. Ed. 2d at 667-68, only an extraordinary deprivation of the assistance of counsel triggers a presumption of prejudice under the federal constitutional standard. Bell v. Cone, 535 U.S. 685, 695-96, 122 S. Ct. 1843, 1850-51, 152 L. Ed. 2d 914, 927-28 (2002) (recognizing Cronic's three presumed prejudice scenarios: complete denial of counsel, failure to subject State's case to meaningful adversarial testing and inability of any counsel to provide competent assistance under certain circumstances). If prejudice were presumed in the setting here, in which the ineffective assistance of counsel claim is premised upon the attorney's exchange with the trial court about the timing of the trial, the Cronic rule would be extended far beyond its traditional parameters, and in contravention of our holding in Fritz. Our law clearly requires a showing of prejudice in this case, and no such showing was made.

Nevertheless, given the late reassignment of the case by the Mercer County OPD, the limited opportunity for defendant and his new counsel to confer prior to the suppression motion, and the lack of an objection by the State, the trial judge would have better served the competing interests at stake with a minimal adjustment to the court schedule. Had the trial court

38

postponed the suppression hearing for a few hours until the afternoon of December 10, 2007, for example, it would have afforded to defendant and his counsel more time to confer but still completed the hearing that day and maintained the schedule for jury selection the following morning.  Such an adjustment would not have required the court to set a new trial date.  We urge trial judges confronted with similar circumstances to accommodate reasonable requests for brief delays so as to permit a defendant an opportunity to confer with newly-assigned counsel.

In this case, the Appellate Division properly upheld defendant's conviction.  The trial judge's denial of the requested adjournment was not an abuse of his broad discretion under the test of Hayes and did not violate defendant's constitutional right to effective representation under Strickland, Cronic and Fritz.

VI.

We respectfully disagree with the dissenting Appellate Division judge that the trial court's denial of defendant's requested adjournment contravened principles of fundamental fairness.  See Miller, supra, 420 N.J. Super. at 99-101 (Fuentes, J.A.D., dissenting).  The doctrine of fundamental fairness "'is an integral part of due process, and is often extrapolated from or implied in other constitutional

39

guarantees.'" Oberhand v. Dir., Div. of Taxation, 193 N.J. 558, 578 (2008) (quoting Doe v. Poritz, 142 N.J. 1, 109 (1995)). "'The doctrine effectuates imperatives that government minimize arbitrary action, and is often employed when narrowed constitutional standards fall short of protecting individual defendants against unjustified harassment, anxiety, or expense.'" Doe, supra, 142 N.J. at 109 (quoting State v. Yoskowitz, 116 N.J. 679, 731 (1989) (Handler, J., dissenting)).

"'Fundamental fairness is a doctrine to be sparingly applied.'" Id. at 108 (quoting Yoskowitz, supra, 116 N.J. at 712 (Garibaldi, J., concurring and dissenting)). The doctrine is "'applied in those rare cases where not to do so will subject the defendant to oppression, harassment, or egregious deprivation.'" Ibid. (quoting Yoskowitz, supra, 116 N.J. at 712 (Garibaldi, J., concurring and dissenting)). "This Court has relied on the concept of fundamental fairness to require procedures to protect the rights of defendants at various stages of the criminal justice process even when such procedures were not constitutionally compelled." Ibid.

This is not the "rare" case in which the doctrine of fundamental fairness mandates reversal of the defendant's conviction. Defendant was not deprived of competent counsel. He had a meeting with his attorney, albeit one constrained in duration and conducted in a less than optimal location, prior to

40

his suppression hearing.  Following that hearing and before the commencement of trial the next day, defendant met in private with his counsel at the attorney's office.  The attorney claimed he was prepared and conducted a vigorous defense on defendant's behalf, and there was no finding of prejudice.  Defendant merely requested more time with his attorney to build "rapport."  There was, in short, no "oppression, harassment, or egregious deprivation" in this case.  Ibid. (quoting Yoskowitz, supra, 116 N.J. at 712 (Garibaldi, J., concurring and dissenting)).  The trial court did not violate principles of fundamental fairness when it denied defendant's motion to adjourn the trial.

VII.

The judgment of the Appellate Division is affirmed.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA and HOENS join in JUSTICE PATTERSON's opinion.  JUSTICE ALBIN filed a separate, dissenting opinion.

41

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

        v.

TERRENCE MILLER,

    Defendant-Appellant.


    JUSTICE ALBIN, dissenting.

    Sadly, today the majority holds that the right to effective assistance of counsel guarantees nothing more than the <u>presence</u> of an appointed attorney at counsel's table -- even if that attorney met with his indigent client for the first time on the day of trial and had no time to consult with him about his case or prepare with him a defense as the trial began. The majority also exalts the trial calendar over a just trial, affirming a judge's decision that denied an adjournment to a woefully unprepared appointed attorney who was forced to stumble through a suppression hearing, calling his client without having spoken with him about the case and not calling witnesses to support his client's account.

    Defendant Terrence Miller was charged with serious drug offenses and faced a prison sentence -- and he was indigent,

1

leaving him dependent on the State to appoint counsel for him. Indeed, Miller's fate -- and any success he might have at trial -- was tied to his ability to prepare a defense after consultation with counsel.

Yet, Miller did not meet his appointed counsel until the day of trial, and the judge's intransigence and his attorney's unpreparedness rendered his suppression hearing and trial a farce. Miller, an impoverished defendant, was treated as just another fungible item to be shuffled along on a criminal-justice conveyor belt. But Miller is more than another dispositional entry on a docket sheet, more than another statistic in some inexorable, impersonal process that knows no delays for justice. He is an individual clothed with constitutional rights, such as the right to a fair trial and the right to the effective assistance of counsel. That the majority turns a blind eye to this fundamentally flawed and appalling process by upholding Miller's conviction will surely disappoint those who believe that this Court is the guardian of our constitutional rights. I therefore respectfully dissent.

I.

A.

Terrence Miller was charged with several drug offenses, including two counts of second-degree possession of cocaine with

intent to distribute on or near a public park, N.J.S.A. 2C:35-7.1(a). On each of those charges alone, if convicted, he faced a presumptive prison sentence of between five and ten years. N.J.S.A. 2C:43-6(a)(2).

In the latter part of 2007, Miller was represented by an attorney from the Mercer County Public Defender's Office. Four days before trial, on Thursday, December 6, 2007, without advising Miller or requesting an adjournment, the Public Defender's Office substituted counsel. Miller's case was assigned to an attorney who, to that point, had been handling juvenile cases on a per diem basis for the Public Defender's Office. The attorney had not tried a criminal trial in seven years. He would later explain that as a result of his eleventh-hour appointment he felt he "was being put in a position that [he] shouldn't be put in."

At approximately 4:00 p.m. on the day of his new assignment, the attorney visited the trial judge in chambers to express his concern that he would not be prepared for trial. The judge waved away his concern, telling him "don't worry about it, we're going to be moving with this case on the 10th." That evening, the attorney spent one and one-half hours putting together a trial binder and beginning to review discovery. Over the next three days, the attorney devoted just five and one-half hours preparing for trial -- without ever discussing the case

3

with his client, any witnesses, the former attorney, or an investigator in the Public Defender's Office. Because he was rusty trying criminal cases, that Saturday he spent three to four hours reviewing the court rules, rules of evidence, and search-and-seizure law.

On Monday, December 10, 2007 at 9:00 a.m., Miller arrived at the courthouse, where he met his new attorney for the first time. In a courthouse stairwell that afforded little privacy, the two engaged in a twenty-five-minute meet-and-greet conversation. As the attorney recalled, awkwardness permeated the conversation between him and his client, for they were complete strangers to each other. The two may have had "some procedural discussions," and the attorney explained his intention to make an adjournment request. At no time did the attorney and his client talk about any "particulars of trial preparation" before ending their conversation.

The attorney then proceeded to confer with the prosecutor for one half hour about a possible plea agreement. The prosecutor offered Miller, through his attorney, a five-year prison term with a two-year parole disqualifier in exchange for a guilty plea. The attorney -- still having never discussed the case or upcoming trial with his client -- conveyed the plea offer. This second discussion with Miller, which lasted one half hour, did not "go anywhere." In all of the fifty-five

4

awkward minutes the attorney spent with Miller before entering the courtroom, the two never discussed the upcoming motion to suppress or trial. They did not converse about a defense, trial strategy, or whether witnesses should be called or subpoenaed. The attorney did not prepare his client for testimony he might give on the stand.

With no joint plan of action, the attorney and Miller appeared in court at approximately 10:30 a.m., as the trial judge commenced proceedings. The attorney knew from his previous conversation with the judge that he was intent on going forward. Carefully choosing words that would not bring the ire of the court down on himself, the attorney stated that his client -- not he -- preferred an adjournment. The attorney said:

> [T]his is the first opportunity I've had to meet with [my client] . . . . And while I understand it is the Court's intention to call this matter and have this matter proceed to trial, in fairness to Mr. Miller, I think he would best prefer that this matter was adjourned to allow an opportunity for us to sit in a more -- in a calmer setting so that we can discuss and plan this particular matter. I've advised him that this matter was -- that the file was provided to me sometime last week, with an opportunity for me to review and prepare. But to that end, I think Mr. Miller would still prefer that this matter not proceed at this time.
>
> [(Emphasis added).]

5

In response, the trial judge made clear that he -- not the Public Defender's Office -- was the master of his calendar. He expressed pique over that office's presumption that transferring Miller's case to a new public defender would dictate whether he -- the trial judge -- moved a case. The trial judge stressed that he would not brook interference with his prerogatives:

> I think as much as three weeks ago the Court, or at least two weeks ago, the Court was aware that [Miller's former public defender] would not be able to try the case. . . .
>
> The Court was informed that . . . the chief of [the public defender's] office, and . . . the assistant chief, were of the opinion that this case couldn't be tried because it would need new counsel. In fact, the Court was told that. . . .
>
> The public defender's office never came to the Court or said to the Court that it wanted specifically an adjournment, although the Court learned of it through [Miller's former public defender] . . . who said that the higher ups thought that the matter just couldn't go ahead.
>
> The Court's response to [Miller's former public defender] was, well, you can go back and tell them that <u>it is the judge who decides whether an attorney can be relieved and under what conditions</u>.
>
> . . . .
>
> This judge has been trying to get a handle on cases for several months and has been <u>unable to move one for trial due to changes in the public defender's office</u> or the prosecutor's office with files. So the Court approximately two weeks ago said this matter is going to trial.

[(Emphasis added).]

Having established who was boss, the trial judge then minimized the seriousness and complexity of Miller's case.  He stated that "trying a drug case for a criminal defense attorney is as easy as trying an intersection accident case for a civil trial lawyer. . . . [T]he scenarios are essentially the same in every case.  There is nothing difficult or complex about this case."  The trial judge was dismissive of what is necessary to prepare a criminal drug case for trial, believing that meeting the client and reading a police report were enough.  He did not acknowledge that an attorney would need to confer with his client in advance of a motion-to-suppress hearing or prepare him to testify or identify and interview potential witnesses.  With those assumptions in mind, the trial judge concluded "that moving the case ahead at this time creates no prejudice to Mr. Miller," although the judge "concede[d] . . . that Mr. Miller is greeted with some level of discomfort . . . ."

With no further ado, and with no further opportunity for Miller to consult with his attorney, the trial judge stated: "The Court is ready to proceed with the suppression hearing."

B.

At the motion-to-suppress hearing, the State called one witness, Patrolman William Mulryne of the Trenton Police Department.  Mulryne testified that with the use of binoculars he observed Miller engage in what appeared to be separate, hand-

7

to-hand drug transactions with two individuals. One of those individuals, Joseph McKinney, was later arrested after discarding drugs in his possession. Mulryne claimed that Miller then walked away from the area. Mulryne next saw Miller ten minutes later at the same street corner exiting a Cadillac. Miller was arrested, and seized from him was $790. The police found a bag of 7.29 grams of crack cocaine in the air-conditioner unit of a nearby building, which Miller purportedly had earlier accessed.

Miller testified that a friend had dropped him off near the street corner, he entered a store, and while there was "grabbed" by the police. The police searched his person and found no drugs on him. Miller was detained outside the store for approximately one hour. Then, a police officer approached with a bag in his hand, saying, "[T]his is his." Miller replied, "It [is] not mine," but the officer responded, "[I]t is yours now." The money found on Miller apparently was his earnings from several jobs. Miller basically contended the case was one of mistaken identification and that the officer could not have clearly seen what he claimed to have observed given that trees and foliage would have blocked his view. (It is noteworthy that Miller's attorney had not visited the scene.)

While on the stand, Miller also complained that he had witnesses to corroborate his account who should have been called

8

at his hearing:  "I had other witnesses that would have been testifying here today that witnessed a lot of other things, too, but for some reason we weren't prepared for the day."  (Emphasis added).  Defense counsel did not ask for a continuance to call those witnesses, including McKinney who was prepared to testify that Miller had not sold him drugs.  Nor did the trial judge on his own give Miller time to call witnesses on his behalf.

Instead, the hearing ended with just the testimony of Officer Mulryne and Miller.  In ruling, the trial judge observed that he was "faced with conflicting stories" of two witnesses and was "limited to the evidence before [him]."  (Of course, it was the judge who limited the evidence by denying the adjournment request.)  The judge concluded that between the two witnesses, he found "Mulryne's testimony was credible," even though Miller's testimony had "plausibility."  The judge discounted Miller's testimony based on his prior criminal record.  Accordingly, the trial judge denied Miller's motion to suppress the evidence.

The next day, December 11, the jury was selected, opening statements were given, and the State presented its case.  On December 14, Miller's attorney placed on the stand three witnesses to support the defense.  In particular, McKinney testified that Miller did not sell him drugs and further that Miller was not a drug dealer.

9

The jury convicted Miller of, among other things, third-degree possession with intent to distribute cocaine. Afterwards, in addressing the court, Miller asserted: "I'm an innocent man. I'm innocent. I'm innocent. It was not me. It was not me. It was my brother."

## II.

In this case we see the convergence of a hopelessly unprepared attorney unwilling to declare in a firm and clear voice that he was not ready for trial and a trial judge frustrated by trial delays and intent on making a point that the Public Defender's Office could not usurp his calendar. Sacrificed in the crossfire between the trial judge and the "higher ups" at the Public Defender's Office were Miller's fundamental rights to the effective assistance of counsel and to a fair trial. An indigent criminal defendant meeting his state-appointed attorney for the first time on the day of trial and having no time to consult with him before a suppression hearing does not fit within any conception of American justice -- and certainly cannot be squared with our constitutional jurisprudence.

### A.

The right to the assistance of counsel is guaranteed by both the United States and New Jersey Constitutions. <u>U.S.</u>

10

Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."); N.J. Const. art. I, ¶ 10 ("In all criminal prosecutions the accused shall have the right . . . to have the assistance of counsel in his defense."). "[T]he right to counsel encompasses the right to the effective assistance of counsel." State v. Nash, 212 N.J. 518, 541 (2013) (emphasis added) (citations and internal quotation marks omitted). The right to the effective assistance of counsel is a necessary corollary to an accused's right to a fair trial. See Gideon v. Wainwright, 372 U.S. 335, 344, 83 S. Ct. 792, 796, 9 L. Ed. 2d 799, 805 (1963) ("[I]n our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him."); State v. Sugar, 84 N.J. 1, 16 (1980) (citations omitted) ("[T]he assistance of counsel is essential to insuring fairness and due process in criminal prosecutions . . . ."). The right to counsel attaches during all "critical stages" of a criminal prosecution, including a motion-to-suppress hearing. See 3 Wayne R. LaFave et al., Criminal Procedure § 11.2(b) at 620, 622-24 (3d ed. 2007).

The mere appointment of counsel, however competent, does not alone satisfy the constitutional guarantee of the right to effective counsel. Avery v. Alabama, 308 U.S. 444, 446, 60 S.

11

Ct. 321, 322, 84 L. Ed. 377, 379 (1940), cited in Sugar, supra, 84 N.J. at 17 ("The right to counsel would be an empty assurance if a formal appearance by an attorney were sufficient to satisfy it."). A criminal defense attorney has an inviolable obligation to consult with his client about the client's case. That is so because consultation "assures that the client will have the opportunity to assist with his own defense." Gov't of the Virgin Islands v. Weatherwax, 77 F.3d 1425, 1436 (3d Cir. 1996) ("[T]he client's views and desires concerning the best course to be followed . . . must be evaluated and taken into account by counsel."). "Defense counsel undoubtedly has a duty to discuss potential strategies with the defendant." Florida v. Nixon, 543 U.S. 175, 178, 125 S. Ct. 551, 555, 160 L. Ed. 2d 565, 572 (2004) (citing Strickland v. Washington, 466 U.S. 668, 688, 104 S. Ct. 2052, 2065, 80 L. Ed. 2d 674, 694 (1984)). Indeed, "the denial of opportunity for appointed counsel to confer, to consult with the accused and to prepare his defense, could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel." Avery, supra, 308 U.S. at 446, 60 S. Ct. at 322, 84 L. Ed. at 379. When the peculiar circumstances of a case "ma[k]e it so unlikely that any lawyer could provide effective assistance," then "ineffectiveness [will be] properly presumed without inquiry

12

into actual performance at trial." United States v. Cronic, 466 U.S. 648, 661, 104 S. Ct. 2039, 2048, 80 L. Ed. 2d 657, 669 (1984). This is just such a case.

No attorney can provide effective representation at a motion-to-suppress hearing if he has not spoken with his client beforehand, listened to his account, interviewed his witnesses, or prepared him for his testimony. Miller had witnesses waiting in the wings but his attorney could not call them because he had not spoken with his client. Sitting next to Miller was a total stranger who happened to be his state-appointed attorney. The failure of the attorney to consult with Miller in any meaningful fashion, to prepare him for his testimony, and to present corroborating witnesses at the motion-to-suppress hearing rendered the attorney per se ineffective.

Thus, this case falls within the narrow band of cases identified in Cronic, supra, in which the "circumstances . . . are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." 466 U.S. at 658, 104 S. Ct. at 2046, 80 L. Ed. 2d at 667. An attorney meeting the most minimal standard of constitutional effectiveness would never proceed with a suppression hearing without preparing his client to testify or discussing with him the witnesses who supported his case. The attorney -- along

with the prosecutor and trial judge -- listened to Miller's account for the first time when he testified from the stand.

The majority contends that it is a "sweeping expansion of existing law" to hold that an attorney who goes to trial without ever consulting or having contact with the client about his case is presumptively ineffective. But the egregious circumstances that led to the denial of effective counsel here are of the same type that the United States Supreme Court envisioned in Cronic. Supra, 466 U.S. at 660-61, 104 S. Ct. at 2048, 80 L. Ed. 2d at 669). In a series of equally egregious cases, the Sixth Circuit found Cronic ineffective-assistance-of-counsel presumptions. See U.S. v. Morris, 470 F.3d 596, 603 (6th Cir. 2006) (finding ineffective assistance of counsel where appointed counsel met with client for several minutes in crowded "bull pen" before choosing whether to proceed on state or federal charges); Mitchell v. Mason, 325 F.3d 732, 744 (6th Cir. 2003) (finding ineffective assistance of counsel where counsel only met with client for a total of six minutes during seven month period before trial); Hunt v. Mitchell, 261 F.3d 575, 582-85 (6th Cir. 2001) (finding ineffective assistance of counsel where court denied defendant opportunity to consult with counsel before voir dire).

That Miller's rights were violated should be self-evident. Unlike the majority, I do not believe that Miller should have to

14

wait in prison for a post-conviction relief hearing to secure the relief to which he is entitled today -- a fair trial.  See State v. Allah, 170 N.J. 269, 285 (2002) ("[D]efendant should not be required to wait until post-conviction relief to raise the issue because the trial record discloses the facts essential to his ineffective assistance claim.")

The absence of prior client consultation rendered the attorney presumptively ineffective.  The harm caused by the deprivation of Miller's right to the effective assistance of counsel is not readily calculable, but the injustice here is undeniable.

B.

Even putting aside the majority's crabbed view of constitutionally effective counsel, Miller was denied due process of law.  The failure to grant an adjournment was a patent abuse of discretion.  If the judge had a point to make with the Public Defender's Office, it should not have been at the expense of Terrence Miller's right to a fair trial.

Clearly, a trial judge has broad discretion in running his calendar.  That discretion, however, cannot be exercised in an arbitrary manner.  Although the grant of an adjournment is within the trial judge's discretion, "when balancing a short delay in the start of trial against defendant's legitimate ability to present a viable defense, . . . the integrity of the

15

criminal process must prevail over [any] administrative disruption." State v. Bellamy, 329 N.J. Super. 371, 378 (App. Div. 2000) (citation omitted).

"The prompt disposition of criminal cases is to be commended and encouraged. But in reaching that result a defendant, charged with a serious crime, must not be stripped of his right to have sufficient time to advise with counsel and prepare his defense." Powell v. Alabama, 287 U.S. 45, 59, 53 S. Ct. 55, 60, 77 L. Ed. 158, 165 (1932). A judge's "myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality" and violate due process. Ungar v. Safarite, 376 U.S. 575, 589, 84 S. Ct. 841, 849-50, 11 L. Ed. 2d 921, 931 (1964).

Miller had a justifiable reason for an adjournment. He had not met his attorney and was proceeding with a critical hearing without having consulted with counsel. The judge was not concerned with Miller's fair-trial rights. Instead, he railed against the "higher ups" in the Public Defender's Office who "thought that [Miller's case] just couldn't go ahead" because of the transfer of a new attorney to represent Miller. The judge told Miller's former counsel to send those "higher ups" a message: "[I]t is the judge who decides whether an attorney can be relieved, and under what conditions." Yet, the trial judge

16

allowed Miller's former appointed counsel to withdraw from the case and compelled a thoroughly unprepared and newly appointed attorney to represent him.

The trial judge had the obligation of ensuring that Miller received a fair trial. Instead, Miller's constitutional rights were cast aside so that the trial judge could teach the Public Defender's Office a lesson and keep his calendar moving.

III.

The proceedings in this case are an affront to our long-established tradition of what constitutes a fair trial. No person, if placed in Miller's position, would believe that he or she was dealt with fairly by our system of justice. The foreseeable consequence of the majority's opinion will be to undermine the public's perception of the integrity of our criminal justice system. As aptly put by Judge Fuentes, the dissenting member of the appellate panel, "[a] system of criminal justice that permits a conviction to stand in a case where an indigent man, through no fault of his own, meets his attorney for the first time on the day the case is scheduled for trial, carries with it the indicia of a 'show trial'. . . ." Miller, supra, 420 N.J. Super. at 104.

Miller was denied the right to the effective assistance of counsel and the right to a fair trial, rights guaranteed by both

17

our federal and state constitutions.  We will have to wait for another day for the rights sacrificed here to be raised once again to their high place in our constitutional jurisprudence.

SUPREME COURT OF NEW JERSEY

NO. _____A-35_____  SEPTEMBER TERM 2011

ON APPEAL FROM _____Appellate Division, Superior Court_____

STATE OF NEW JERSEY,

        Plaintiff-Respondent,

             v.

TERRENCE MILLER,

        Defendant-Appellant.

DECIDED _____October 1, 2013_____

           Chief Justice Rabner_____ PRESIDING

OPINION BY _____Justice Patterson_____

CONCURRING/DISSENTING OPINION BY _____

DISSENTING OPINION BY _____Justice Albin_____

| CHECKLIST | AFFIRM | REVERSE |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | | X |
| JUSTICE HOENS | X | |
| JUSTICE PATTERSON | X | |
| | 4 | 1 |